In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3767

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY L. KOERTH a/k/a LONNIE YOUNGER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-CR-52-C-1—**Barbara B. Crabb**, *Chief Judge.*

ARGUED FEBRUARY 13, 2002—DECIDED DECEMBER 5, 2002

Before COFFEY, MANION and WILLIAMS, *Circuit Judges.*

COFFEY, *Circuit Judge.* Larry L. Koerth appeals the denial of a motion to suppress evidence seized by police officers acting under the authority of a facially valid search warrant issued by a state judge. The district court found that even though the affidavit was insufficient to establish the probable cause requirement for the issuance of a search warrant, the evidence seized was admissible under the good-faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984). We affirm.

**I.**

On the morning of August 31, 2000, Wisconsin West Central Drug Task Force[1] Investigator Tina Sturz obtained a search warrant from Chippewa County Circuit Judge Roderick A. Cameron authorizing the search of a house occupied by Larry L. Koerth and his girlfriend in the town of Bloomer, Wis. Thereafter, Inv. Sturz and several other agents entered the residence and seized illegal weapons, ammunition, and drugs.[2] The case was referred to the federal authorities for prosecution, and subsequently a federal grand jury returned a two-count indictment charging Koerth with unlawful possession of controlled substances, 21 U.S.C. § 841(a)(1), and an assault weapon, 18 U.S.C. § 922(o).

Before trial Koerth filed a motion to suppress the evidence. The trial judge referred the motion to U.S. Magistrate Judge Stephen L. Crocker for review and recommendation. 28 U.S.C. § 636(b). The defendant argued that the seizure violated the Fourth Amendment because the agents could not have reasonably believed that the warrant was supported by probable cause, notwithstanding the state judge's ruling to the contrary. After reviewing the relevant law and the documents submitted by the defendant with his motion, Magistrate Judge Crocker recom-

[1]  The Wisconsin West Central Drug Task Force works together with the State of Wisconsin Department of Justice's Division of Narcotics Enforcement as well as the Chippewa County Sheriff's Department.

[2]  Although Special Agent Jay Smith of the State of Wisconsin's Division of Narcotics Enforcement did sign an affidavit in support of a request for a warrant authorizing the arrest of Koerth on November 9, 2000, and even though the district court did order the confinement of the defendant pending trial at Dane County Jail on May 7, 2001, the record does not make clear exactly when Koerth was taken into custody.

mended that the defendant's motion to suppress should be denied, for despite the judge's opinion that Sturz's affidavit failed to establish probable cause, he found that the agents reasonably believed that the affidavit was sufficient to establish probable cause in the officers' minds.

The magistrate's report was filed with the trial judge, who reviewed the recommendation and findings and issued a 2-page order adopting his recommendations and denying the motion to suppress. The court ruled that "although it is the case that the affidavit in support of the search warrant lacked sufficient facts to establish probable cause . . . [it] was not so clearly inadequate that this fact would have been obvious to the officers." Defendant Koerth thereafter appeared before the trial judge, entered into a limited plea agreement, and pled guilty to both of the charges in the indictment—possession of illegal substances and an assault weapon—with a reservation of the right to appeal the denial of his motion to suppress. The court accepted the agreement and the guilty plea, received testimony and found the defendant guilty as charged, and sentenced him to 71 months in prison followed by a three-year term of supervised release.

**II.**

We defer to the warrant-issuing judge's initial determination of probable cause if "there is substantial evidence in the record supporting the judge's decision." *United States v. Lloyd*, 71 F.3d 1256, 1262 (7th Cir. 1995). We apply the clear error standard of review to any additional factual findings or credibility determinations made by the district judge based upon affidavits and/or testimony received during a suppression hearing, and apply the *de novo* standard of review to the federal court's ultimate legal conclusion of whether a law enforcement officer reasonably relied upon a subsequently invalidated search

warrant. *See United States v. Spry*, 190 F.3d 829, 834-35 (7th Cir. 1999); *United States v. Adames*, 56 F.3d 737, 747 (7th Cir. 1995).

**III.**

**A.**

The issue is whether the trial court committed error when it denied the motion to suppress the evidence seized. Unless "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," we will suppress evidence obtained pursuant to a facially valid warrant issued by a neutral, detached magistrate only if: (1) the warrant is later invalidated; and (2) the police could not have relied in objective good faith upon the neutral and detached magistrate's decision to issue the warrant. *See Leon*, 468 U.S. at 914, 923.

When there is a genuine dispute about whether a police officer could have reasonably relied in good faith upon a state judge's decision to issue a search warrant, reviewing courts are encouraged to consider this threshold question first: Did the affidavit provide the magistrate with a "substantial basis" to rule that there was probable cause? *Illinois v. Gates*, 462 U.S. 213, 238 (1983). If the question is answered in the affirmative, then it follows that the officer's actions were reasonable. On the other hand, if this question is answered in the negative, then we must ascertain the answer to the question: Could the officer have *reasonably believed* that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause? *See United States v. Leon,* 468 U.S. 897, 920-24 (1984); *see also United States v. Danhauer*, 229 F.3d 1002, 1005-07 (10th Cir. 2000); *United*

*States v. Dahlman*, 13 F.3d 1391, 1397-98 (10th Cir. 1993). By resolving the issue of probable cause before addressing the question of good-faith reliance, we further the *Leon* Court's goal of establishing legal principles that will serve to "guide future action by law enforcement officers and magistrates" who review, issue, and apply for warrants. *Leon*, 468 U.S. at 925.

**B.**

When, as here, the affidavit is the only evidence presented to the warrant-issuing magistrate, "the warrant must stand or fall solely on the contents of the affidavit." *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967). In the case before us, the name of the informant was undisclosed and the issuing magistrate was not presented with any live testimony. Thus, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." *Id.*

The court must examine the totality of the circumstances to determine whether the affidavit on its face established probable cause. Where the affidavit is supported by an informant's tip, the totality-of-the-circumstances inquiry encompasses several factors, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and

police officer's application for the search warrant. *United States v. Jones*, 208 F.3d 603, 609 (7th Cir. 2000); *Lloyd*, 71 F.3d at 1262; *United States v. Lamon*, 930 F.2d 1183, 1187-88 (7th Cir. 1991). The court should also consider whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity. *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996).

The magistrate judge's decision to issue a warrant "is to be given considerable weight" and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated. *Spry*, 190 F.3d at 835 (internal quotations omitted). It is well-established that appellate courts may not uphold a warrant issued based solely on conclusory allegations. "Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances or because the form of the warrant was improper in some respect." *Leon*, 468 U.S. at 915 (internal citation omitted).

The Government concedes that Inv. Sturz's affidavit failed to establish a substantial basis for concluding that there was probable cause to search Koerth's house. (Br. at 23.) Inv. Sturz's affidavit reads as follows:

> On Wednesday, Aug. 30, 2000, a search warrant was executed at 806 Ruff Pl., Bloomer, Wis., which led to the seizure of marijuana, methamphetamine, and U.S. Currency. Investigation revealed that the mari-

juana and methamphetamine were purchased from a white male, known as Lonnie, who resides at 2344 195th Ave.

Abraham Savage, who is believed to be a reliable source, indicated that he was at Lonnie's on Thursday, Aug. 29, 2000, and witnessed a large amount of marijuana. Savage stated he believed there was approximately 150-200 pounds of marijuana at the residence, as well as approximately two pounds of methamphetamine, a large bag of cocaine, and $30,000 in U.S. currency.

Savage has purchased from Lonnie in the past and that [sic] Lonnie is a member of the Iron Wings Motorcycle Club. Savage has also seen numerous firearms in the residence to include [sic] fully automatic weapons. Savage also indicated that Lonnie "would not be afraid to shoot" and that "law enforcement would have to shoot it out with him."

Based on concern for officer and citizen safety, affiant requests a "no knock" provision.

/s/ Tina Sturz

The Sturz affidavit presented the magistrate judge with little more than mere conclusions and assertions of wrongdoing on the part of the defendant, without an adequate factual foundation, based on the testimony of a previously unknown informant. We therefore accept the Government's concession, for we are convinced that the affidavit failed to sufficiently support the search warrant executed by Sturz.

Another attack made on the contents of the affidavit focuses on the credibility of the informant. Initially, the affidavit fails to explain the extent, if any, that Savage has previously provided information leading to arrests or prosecutions for criminal activity of any kind. Even

assuming the affidavit's conclusory statement that Savage "is believed to be a reliable source," our cases hold that such characterizations, standing alone without any supporting factual information, merit absolutely no weight and that "information obtained from 'a reliable source'" must be treated "as information obtained from an informant of 'unknown reliability.'" *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999).

Statements from an informant of unknown reliability may in certain instances serve to establish probable cause if, under the totality of the circumstances, a reasonable person might consider that the statements are worthy of credence. *Gates*, 462 U.S. at 238. In this particular case, the Government agrees that the officers failed to present sufficient evidence tending to convince us that Savage was a reliable informant. Furthermore, for reasons unexplained, the officers did not see fit to present Savage to testify in person before the warrant-issuing judge, despite the fact that Savage was available and being held in custody at the county jail. While "it is possible that weak factual information may be bolstered if the authorities undertake probative efforts to corroborate an informant's claims," *United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996), Inv. Sturz failed to provide the magistrate judge with information stating what steps, if any, were taken to corroborate his statements contained in the warrant application.

To uphold the state judge's ruling in this case would be to ratify the search of a home based on the use of essentially conclusory statements without corroboration. Although the task force agents are to be commended for ferreting out and apprehending the defendant in this case, we refuse to water down the probable cause standard in the name of fighting crime. Due to the lack of the necessary quantum of reliable information, we hold that the warrant was invalid. *See Reddrick*, 90 F.3d at 1279-81;

*United States v. Fairchild*, 940 F.2d 261, 263-64 (7th Cir. 1991); *United States v. Brown*, 832 F.2d 991, 993-94 (7th Cir. 1987); *United States v. McNeal*, 82 F. Supp. 2d 945, 951-60 (S.D. Ind. 2000). Nevertheless, we refuse to suppress the evidence seized, for we are convinced that Defendant-Appellant Koerth failed to rebut the Government's *prima facie* case establishing that the officers acted in good faith and reasonably believed that they had fulfilled the probable cause requirement necessary to obtain a search warrant.

## C.

If a defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant. *See Leon*, 468 U.S. at 924. An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith. *See id.* at 921 n.21; *Gates*, 462 U.S. at 263 (White, J., concurring); *see also Fairchild*, 940 F.2d at 264-65; *Brown*, 832 F.2d at 994-95. Two ways that the defendant may rebut this *prima facie* case are by presenting evidence to establish either that: (1) the magistrate "wholly abandoned his judicial role," or otherwise failed in his duty to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police"; *Leon*, 468 U.S. at 923, 914; or (2) the officer submitted an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

In attempting to rebut the Government's *prima facie* case of good-faith reliance, Koerth initially argues that the trial judge merely rubber-stamped the warrant presented to him. An officer may not rely upon a search warrant if he is aware or had reason to believe that the

magistrate improperly issued the warrant without meaningfully and critically evaluating the evidence presented at the probable cause hearing. *See*, *e.g.*, *Stewart v. State*, 711 S.W.2d 787 (Ark. 1986). *Cf. Brown*, 832 F.2d at 997; *United States v. Breckenridge*, 782 F.2d 1317, 1321 (5th Cir. 1986). Although we have difficulty understanding how a defendant can establish that the trial judge acted as a rubber stamp in the absence of evidence detailing the impropriety or inadequacy of the warrant application proceedings as well as the type of interaction (or lack thereof) between the judge and the officers. It is interesting to note that Defendant Koerth advised the magistrate that he was willing to have his suppression motion decided without the benefit of a formal evidentiary hearing. (Tr. at 3-6.) Koerth failed to submit a shred of evidence (such as an affidavit, police record, or deposition transcript) to substantiate his bold and speculative accusation that the state magistrate "neither read or reviewed the affidavit, nor engaged in any dialogue with Inv. Sturz before the warrant was signed." (Br. at 13.) Based upon the totality of the information presented, including our review of the record, we are convinced that the judge complied with the requirement of acting as a neutral and detached magistrate by giving careful consideration to Inv. Sturz's warrant application.

The remaining issue, then, is whether the affidavit presented to the judge was "so lacking in indicia of probable cause," *Leon*, 468 U.S. at 923, that no officer could have "harbored an objectively reasonable belief" to the contrary. *Id.* at 926. In order to determine whether an officer could have relied in objective good faith on the magistrate's decision to issue a search warrant, we limit our inquiry to whether the officer could have reasonably believed that the materials presented to the magistrate judge (either in an affidavit or in some other respect such as testimony from the police officers) were sufficient to

establish probable cause. *See Leon*, 468 U.S. at 915 & n.13, 923 n.23; *United States v. Bynum*, 293 F.3d 192, 210-13 (4th Cir. 2002) (Michael, J., dissenting); *United States v. Wilhelm*, 80 F.3d 116, 121-22 (4th Cir. 1996); *United States v. Baker*, 894 F.2d 1144, 1149-50 (10th Cir. 1990); *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988).

We evaluate an officer's good-faith reliance with an analysis similar to that used in cases involving the affirmative defense of qualified immunity. *See Olson v. Tyler*, 825 F.2d 1116, 1120 (7th Cir. 1987) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)). "Police officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." *Brown*, 832 F.2d at 995. When evidence has been obtained pursuant to a subsequently invalidated search warrant, we will exercise our discretion and admit the evidence only if we are convinced, after review, it is appropriate to do so pursuant to *Leon*'s exception to the exclusionary rule. That is to say, we will admit the evidence unless: (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. *See also Hope v. Pelzer*, 122 S.Ct. 2508, 2515-16 (2002); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

We are convinced that Inv. Sturz acted in objective good faith, and the evidence seized by the drug task force was properly admitted, because it was not clearly established on August 31, 2000 that Inv. Sturz's affidavit failed to justify a search of Defendant Koerth's house. We explained in Part III.B that it was clearly established prior to August 31, 2000 that an officer seeking to obtain a search

warrant was required to provide more than an uncorroborated, conclusory assertion of illegal activity from a *confidential informant* of unknown reliability. However, Koerth has failed to provide us with any cases holding that an affidavit materially similar to Inv. Sturz's would fail to meet the test of establishing probable cause based upon information from a *named informant* like Savage. Savage had first-hand knowledge of a criminal suspect's alleged illegal activity and his testimony arguably included *statements against his penal interest* even though that testimony was presented in a conclusory and essentially uncorroborated fashion. Based on the evidence presented in the absence of such a ruling, we refuse to hold that Inv. Sturz behaved unreasonably, or acted in objective bad faith, or disregarded clearly established law when conducting her investigation and relying upon the search warrant issued in the case before us. *See Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998).

Inv. Sturz's affidavit does contain some indicia of illegal drug dealing at the house on 195th Place, Bloomer, Wis. A practical, common-sense reading of the affidavit presented reveals that Savage had purchased drugs from Koerth on prior occasions, the most recent of which was within 56 hours of the issuance of the warrant. On this prior occasion, Savage visited the house on 195th Place and observed a large quantity of marijuana, methamphetamine, and cocaine along with fully automatic weapons and what he estimated to be $30,000 in currency, thereby implying that Koerth was engaged in ongoing acts of drug trading from the house. As we said in *Perry*:

> [T]he factfinder was certainly entitled to infer, using his God given gift of common sense, that [the defendant] knew of the substantial drug transaction taking place. Judges in the federal system, whether they are in the trial or appellate system, do not operate in a

vacuum, shielded from knowledge of drug operations in the real world of the 1980's.

*United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir. 1984).

It is "beyond dispute that drug traffickers are often armed and dangerous," *United States v. Ocampo*, 890 F.2d 1363, 1369 (7th Cir. 1989), and it is well-known that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *Lamon*, 930 F.2d at 1188. Thus, it should be clear that Savage's statements provided the type of facts that, if corroborated or explained in greater detail, might very well have been sufficient to establish probable cause. *See id.* at 1187-88.

Furthermore, Savage's statements to the investigating officer referred to in the affidavit on file in this case were made on August 30, 2000, almost immediately after police searched his home and found him in the possession of drugs and other illicit substances which he stated he had just recently purchased from Koerth (within 56 hours prior to August 30, 2000). One inference that the state magistrate judge could have drawn was that Savage, in an attempt to strike a bargain with the police, had a strong incentive to provide accurate and specific information rather than false information about Koerth's illegal activity. *See United States v. Leidner*, 99 F.3d 1423, 1429-30 (7th Cir. 1996); *State v. Ward*, 604 N.W.2d 517, 524 (Wis. 2001). *But cf.* 2 LaFave, Search & Seizure § 3.3(c) at 131 (1996).

Unlike the confidential (undisclosed) informants in the cases cited by the defendant, Savage's identity was made known to the magistrate judge at the probable cause hearing. Though an anonymous tip "alone seldom demonstrates the informant's basis of knowledge or veracity," *Alabama v. White*, 496 U.S. 325, 329 (1990), a magistrate in the exercise of sound judgment is entitled to give greater weight to a tip from a known informant, who can be

held responsible should he be found to have given misleading information to police officers, and thus has an incentive to provide truthful information to the detectives. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000); *Adams v. Williams*, 407 U.S. 143, 146-47 (1972); *see also* WIS. STAT. § 946.41 (prohibiting the filing of false reports with a police officer). For these reasons and others set forth herein, we hold that the judge acted within his discretion when deciding to give greater weight to the information gained from Savage rather than from some anonymous informant, considering that the police found Savage in possession of a quantity of illegal drugs and he identified Koerth contemporaneously, at the same time of his arrest. *See Webb v. Lane*, 922 F.2d 390, 394 (7th Cir. 1991); *Gross v. Greer*, 773 F.2d 116, 120 (7th Cir. 1985).

As a final matter, because the probable-cause determination is based solely on the information presented during the warrant application process, we note that the district judge properly refused to consider documents that were not presented to warrant-issuing Judge Cameron and were cited by the Government for the first time at the suppression hearing in federal court. (Doc. 23 at 13.) As courts have previously stated:

> The *Leon* test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate. An obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge. . . . *Leon* creates an exception to the exclusionary rule when officers have acted in reasonable reliance on the ruling of a judge or magistrate. The point is that officers who present a colorable showing of probable cause to a judicial officer ought to be able to rely on that officer's ruling in executing the warrant. When the officers have not presented a colorable showing . . . the reasoning of *Leon* does not apply.

*Hove*, 848 F.2d at 140 (internal citations omitted). *See also Bynum*, 293 F.3d at 212 (Michael, J., dissenting) ("In sum, the Government cannot establish an officer's objective good faith under *Leon* by producing evidence of facts known to the officer but not disclosed to the magistrate."); *Baker*, 894 F.2d at 1149-50.

## IV.  CONCLUSION

Inv. Sturz obtained the warrant to search Defendant Koerth's house on August 31, 2000. We are unaware of any cases decided prior to that date, nor have any been cited to us by the defendant, where a federal court suppressed evidence in a case involving an affidavit with materially similar factual recitations as the one before us, where the officers provided a magistrate with indicia of probable cause based on information from a named informant making statements almost contemporaneous with his arrest, which were based on personal knowledge and determined to have been against the informant's penal interest. Although Savage's affidavit lacks the detail or corroboration necessary to establish probable cause, the affidavit does make clear that Savage had repeatedly purchased drugs from Koerth on previous occasions, including a purchase within the previous 56 hours, at which time Savage had the opportunity and did observe a large quantity of the same drugs, which he estimated to be 150-200 pounds of marijuana, two pounds of methamphetamine, and a bag of cocaine, along with illegal weapons and an unusually large amount of cash at Koerth's residence. We are convinced that it was objectively reasonable for Inv. Sturz to rely in good faith upon the state trial judge's decision to issue the warrant to search the defendant's residence for drugs and drug-related paraphernalia. We hold that the district judge properly denied Larry L. Koerth's motion to suppress the evidence based upon the

good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*