UNITED STATES of AMERICA,
Plaintiff–Appellee,

v.

Abraham L. SAVAGE, Defendant–
Appellant.

No. 02–2141.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 2002.

Decided Feb. 14, 2003.

Before FLAUM, MANION, and
ROVNER, Circuit Judges.

### ORDER

Abraham Savage pleaded guilty to various drug-related offenses and was sentenced to 125 months' imprisonment. Abraham reserved the right to appeal the denial of his motion to suppress evidence obtained during a search of his home. Abraham now appeals.[1] In addition to

---

1. Abraham's wife Melissa was also convicted of various drug-related offenses and she was sentenced to 46 months' imprisonment. She filed an appeal of her sentence, but that ap-

challenging the constitutionality of the search of his home, Abraham also appeals from the district court's calculation of the quantity of drugs involved in his offense. We affirm.

## I.

The government's investigation of Abraham's drug dealing began with the arrest of Ryan Kollwitz on August 30, 2000. Once in custody, Kollwitz told the investigating officers that he had purchased a methamphetamine/cocaine mixture of drugs ("cocaine mix") from Melissa Savage through his girlfriend, Penny Schwartz. Kollwitz further stated that his only other drug source was Abraham Savage. Schwartz later confirmed that she acted as a go-between for Kollwitz and Melissa, helping Kollwitz purchase the cocaine mix from Melissa.

Based on this information, Investigator Tina Sturz of the Wisconsin West Central Drug Task Force prepared a search warrant application seeking permission to search the home of Abraham and Melissa Savage in Bloomer, Chippewa County, Wisconsin. In the probable cause section of Sturz's warrant application, she stated:

> On Wednesday, August 30, 2000, I made contact with Penny Schwartz, F/W, 10–28–81, who indicated she has purchased methamphetamine from Melissa Savage several times a week for the past three months. Schwartz indicated that she typically meets Savage at the Bloomer IGA but has been to Savage's residence located at 806 Ruff Place, Bloomer, Wisconsin. Schwartz stated she picks up 10 gms of methamphetamine at a time, paying $800.00 each time. Savage shares her residence with her husband Abe Savage, who has had previous contacts with the West Central Drug Task Force. Schwartz also indicated a male subject known to her as Tony, lives in a camper

in the Savages' yard and has observed him selling marijuana in the past. Schwartz advised the sale was usually a quarter pound quantity.

Chippewa County Circuit Court Judge Thomas Sazma issued a search warrant for the Savages' house and at 12:58 a.m. on August 31, 2000, officers executed the warrant. During the search, officers discovered and seized $550 in cash, drug notes, five boxes of various size baggies (in the master bedroom), a small amount of marijuana, and 22.83 grams of a cocaine mixture which had been separated into more than 20 individual packets.

After executing the warrant, and while further investigating the Savages, the agents interviewed various individuals and learned additional details concerning their drug operations. Specifically, the government learned from Kollwitz that he had purchased marijuana, cocaine, and methamphetamine from Abraham between late December 1999 through late May or early June 2000. Kollwitz later testified that he stopped buying the cocaine mixture from Abraham because Abraham added too much dilutant to the mixture, and that from late May or June 2000 to August 30, 2000, he instead purchased the cocaine mix from Melissa. One of Abraham's customers, Mark Parrish, also testified that he told Abraham that he had heard a rumor that Melissa was selling the cocaine mix behind his back. Abraham responded: "[T]hat can't happen. That can't be," stating that he would know if Melissa were selling drugs. Parrish also stated that he called Abraham on the night Kollwitz was arrested, warning him about Kollwitz's arrest. Abraham responded that he had "taken care of or cleaned out the house." However, subsequent to the search of the Savages' residence where police recovered 22.83 grams of cocaine mix, Parrish asked

peal was dismissed under Fed. R.App. P. 42(b) and Circuit Rule 51(f).

Melissa how that happened. She responded, "I'm so stupid, I'm going to lose my kids over this...."

Based on the above evidence, Abraham and Melissa were indicted for various drug-related offenses. On January 10, 2002, Abraham pleaded guilty to an information charging him with two counts of distributing marijuana and one count of conspiring to distribute marijuana.[2] Abraham's plea agreement explicitly reserved the right to appeal any denial of his motion to suppress the evidence recovered during the August 31, 2000 search of his home. A magistrate judge later recommended denying Abraham's motion to suppress. The district court adopted the magistrate judge's report and recommendation and denied the motion to suppress.

The district court then sentenced Abraham. In sentencing him, the district court first determined the relevant quantity of drugs involved in the offense, and concluded that Abraham should be held responsible for the drugs recovered from the Savages' house on August 31, 2000 and for other drugs sold by Melissa because, in the district court's view, Melissa was selling those drugs with Abraham's knowledge and approval. The district court then sentenced Abraham to 125 months' imprisonment, followed by three years of supervised release. Abraham appeals.

## II.

On appeal, Abraham first challenges the district court's denial of his motion to suppress the evidence seized during the August 31, 2000 search of his home, claiming that probable cause did not support the issuance of a search warrant. Abraham also appeals his sentence, arguing that the district court erred in holding him responsible for the cocaine mix recovered during

the search because those were drugs that Melissa was selling on her own.

### A. Motion to Suppress

Abraham first challenges the district court's denial of his motion to suppress the evidence seized from his home during the August 31, 2000 search, arguing that the search warrant application failed to establish probable cause. Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In determining whether probable cause exists, we must examine the totality of the circumstances and consider "several factors, including (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant." *United States v. Koerth,* 312 F.3d 862, 866 (7th Cir.2002). Factual findings or credibility determinations made during a suppression hearing are reviewed for clear error, while the ultimate legal conclusion as to whether probable cause existed is reviewed *de novo. Id.* at 865.

On appeal, Abraham does not challenge any factual issues; instead, he contends that the facts alleged in the warrant application and the supporting affidavit, even if true, fail, as a matter of law, to establish probable cause. In support of his position, Abraham cites *Koerth,* 312 F.3d 862, which involved many of the same parties involved in the case at hand. Specifically, in the

**2.** Melissa also pleaded guilty to one count of possession of a cocaine and methamphetamine mixture with the intent to distribute.

*Koerth* case, Larry Koerth challenged a search warrant issued by a state judge which was also based on an affidavit filed by Officer Sturz. *Id.* at 867. And in her warrant application in *Koerth*, Officer Sturz relied on a statement Abraham Savage made following his arrest. Because of the factual similarities, we quote Officer Sturz's affidavit from *Koerth* in total:

> On Wednesday, Aug. 30, 2000, a search warrant was executed at 806 Ruff Pl., Bloomer, Wis., which led to the seizure of marijuana, methamphetamine, and U.S. Currency. Investigation revealed that the marijuana and methamphetamine were purchased from a white male, known as Lonnie, who resides at 2344 195th Ave.
>
> Abraham Savage, who is believed to be a reliable source, indicated that he was at Lonnie's on Thursday, Aug. 29, 2000, and witnessed a large amount of marijuana. Savage stated he believed there was approximately 150–200 pounds of marijuana at the residence, as well as approximately two pounds of methamphetamine, a large bag of cocaine, and $30,000 in U.S. currency.
>
> Savage has purchased from Lonnie in the past and that [sic] is a member of the Iron Wings Motorcycle Club. Savage has also seen numerous firearms in the residence to include [sic] fully automatic weapons. Savage also indicated that Lonnie "would not be afraid to shoot" and that "law enforcement would have to shoot it out with him." Based on concern for officer and citizen safety, affiant requests a "no knock" provision. *Id.* at 867.

In *Koerth*, we concluded that this affidavit failed to establish probable cause. In so holding, we noted that the affidavit failed "to explain the extent, if any, that Savage has previously provided information leading to arrests or prosecutions for criminal activity of any kind." We also noted that the affidavit's "conclusory statement that Savage 'is believed to be a reliable source,'" standing alone, was insufficient and that since Savage was not present to testify in person, the judge could not independently assess his credibility. *Id.* Additionally, we explained that Officer "Sturz failed to provide the magistrate judge with information stating what steps, if any, were taken to corroborate [her] statements contained in the warrant application." *Id.* at 868. Under the totality of these circumstances, we concluded in *Koerth* that the warrant was invalid. *Id.*

■ Like *Koerth*, in this case the affidavit filed by Officer Sturz failed to explain whether Schwartz had previously provided accurate information or was otherwise known to be a reliable source. Likewise, Schwartz did not testify in person during the warrant application hearing. Finally, Officer Sturz failed to present any evidence that the government had taken any steps to confirm the statements contained in the warrant application. The government responds by arguing that Schwartz's statement was sufficient to establish probable cause because her statement implicated her in criminal activities. But in *Koerth*, the statement Savage made and on which Officer Sturz relied in applying for a warrant for Koerth's home, also implicated Savage in criminal activities. *Id.* at 870. Nonetheless, we concluded in *Koerth* that the affidavit failed to establish probable cause. Under the analogous circumstances of this case, we conclude that the search warrant authorizing the search of the Savages' home was invalid.

However, that does not end the inquiry. Rather, where evidence is seized pursuant to a facially valid search warrant, as it was in this case, the question remains as to whether the officer acted in good faith and could "have *reasonably believed* that the facts set forth in the affidavit were suffi-

cient to support a magistrate's finding of probable cause." *Id.* at 866 (emphasis in original). This is because, as the Supreme Court held in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926.

In this case, Abraham does not allege that the magistrate abandoned his neutral role or that Officer Sturz was dishonest or reckless in preparing her affidavit, so the only question is whether Officer Sturz, objectively, could have reasonably believed in the existence of probable cause. In determining whether the executing officers had an objectively reasonable belief in the existence of probable cause, we consider whether "a reasonably well-trained officer would have known that the search was illegal despite the judge's authorization." *United States v. Adames,* 56 F.3d 737, 747 (7th Cir.1995). However, as the Supreme Court concluded in *Leon,* suppression of evidence "should be ordered only on a case-by-case basis and only in those unusual cases in which the exclusion will further the purposes of the exclusionary rule." *Leon,* 468 U.S. at 918.

■ This case is not the unusual case. Rather, while we have concluded that probable cause was lacking, we cannot say that a reasonably well-trained officer would have known the search was illegal despite the warrant. In fact, in this case, not only did the state judge conclude that probable cause existed, but a federal magistrate judge and the Chief District Court judge all found that probable cause supported the issuance of the search warrant for Abraham's home. Although that conclusion was erroneous, the fact that three judges believed probable cause existed demonstrates that it was objectively reasonable for a police officer to likewise believe that probable cause existed.

Moreover, while Abraham relies substantially on *Koerth* to support his view that probable cause was lacking, he then seeks to distance himself from *Koerth*'s ultimate holding that the evidence seized was admissible under the good faith exception of *Leon.* Specifically, *Koerth* concluded that even though probable cause did not support the search warrant, Officer Sturz reasonably relied on the facially valid warrant, and therefore the evidence seized was admissible. In so concluding, we noted that at the time that Officer Sturz applied for the warrant, the case law did not clearly demonstrate that an affidavit similar to Officer Sturz's was insufficient to establish probable cause. *Id.* at 869–70. We also noted in *Koerth* that the affidavit relied upon by Officer Sturz included information provided by Savage who had "firsthand knowledge of the criminal suspect's alleged illegal activity and his testimony arguably included *statements against his penal interest, . . .*" *Id.* at 870 (emphasis in original). Based on these facts, we concluded that Sturz was reasonable in believing the search constitutionally permissible. Likewise, in this case, Schwartz's statement on which Officer Sturz relied in the warrant application implicated Schwartz and constituted a statement against her penal interests. Thus, as in *Koerth,* in this case Officer Sturz could have reasonably relied on the warrant issued by the state court judge. Moreover, while these officers and judges would have benefitted from our holding in *Koerth* to clarify the requirements for a valid warrant, *Koerth* was not issued until well after these events transpired. Therefore, the evidence seized is admissible under the good faith exception of *Leon,* and accordingly, the district court did not err in denying Abraham's motion to suppress the evidence seized

during the August 31, 2000 search of his home.

## B.  Abraham's Sentence

In addition to challenging the district court's denial of his motion to suppress, Abraham also takes issue with the district court's calculation of his sentence. Specifically, Abraham contends that the district court erred in holding him responsible for the twenty ounces of cocaine mix that Melissa sold to Kollwitz and Schwartz during the summer of 2000, and for the 22.83 grams of cocaine mix recovered from their home during the August 2000 search. Abraham claims that he should not be held responsible for these amounts because Melissa had gone behind his back in selling these drugs, and he had no knowledge of her activities.

The district court's determination of the quantity of drugs attributable to a defendant is a finding of fact which we review for clear error. *United States v. Townsend,* 73 F.3d 747, 751 (7th Cir.1996). In this case, the district court concluded that Abraham was responsible for the drugs Melissa sold and possessed because it did not believe that Melissa had gone out on her own to distribute these drugs. Rather, the court noted that it "absolutely c[ould] not find that Abe Savage didn't understand what was going on and wasn't using [Melissa] for a sophisticated way of selling drugs to people that had soured on him and his stepfather because they were trying to off-load low quality drugs and use too much cut." The district court reached this conclusion based on several circumstances, including the fact that throughout their relationship Melissa "was intimidated and threatened by Abe Savage," and thus it was incredible to believe that she "all of a sudden ... turn[ed] into this freewheeler, independent operator selling out of her house; ...." The court also noted that given this relationship, it was impossible to believe that Melissa would have dared to have gone to Abraham's supplier for drugs (which is what she claimed she did), and not to have expected him to find out that she was selling drugs to his former customers, especially in the small Wisconsin community of Bloomer. Thus, the district court concluded that Melissa was not acting independently, but rather as a front for Abraham, so as to allow him to continue selling drugs to dissatisfied former customers.

On appeal, Abraham contends that this finding was clearly erroneous because he stated that he did not know Melissa was selling drugs, and Melissa claimed that he was ignorant of her drug dealings. Abraham also points to the fact that he told a customer that Melissa was not selling drugs on her own. Moreover, Abraham claims that had he known of Melissa's drug dealings, he would have removed the 22 grams of drugs from their house after Parrish called to warn him of Kollwitz's arrest. Finally, Abraham points to the government's position at sentencing that he should not be held responsible for the drugs Melissa sold and possessed.

■ It is true that the government took the position before the district court that Abraham was not responsible for the drugs Melissa sold and possessed. However, the district court is not bound by the government's position, but rather must make its own independent findings of fact. Moreover, although there was evidence indicating that Melissa was selling drugs on her own, the evidence outlined above also supports the district court's finding to the contrary. Furthermore, a complete reading of the district court's ruling demonstrates that the court considered carefully all of the evidence and thoroughly supported its factual findings. Under these circumstances, the district court did not commit clear error in holding Abraham responsible for the drugs Melissa sold and possessed. *See United States v. McGill,* 32

F.3d 1138, 1143–44 (7th Cir.1994) ("where there are two permissible views of the evidence the factfinder's selection of one of the two reasonable choices cannot be clearly erroneous").

### III.

In conclusion, while the evidence presented in support of the search warrant application failed to establish probable cause, the police relied in good faith on the warrant and therefore the district court did not err in denying Abraham's motion to suppress. Additionally, the district court did not commit clear error in holding Abraham responsible for the drugs Melissa personally sold and possessed, because the evidence was sufficient to support the district court's conclusion that Melissa was acting as a front for Abraham. For these and the foregoing reasons, we AFFIRM.