NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 14, 2008
Decided June 20, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 07-2526 | Appeal from the United States District Court for the Central District of Illinois |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 05 CR 30105 |
| *v.* | **Jeanne E. Scott**, *Judge*. |
| LARRY D. BUTLER, *Defendant-Appellant*. | |

**O R D E R**

Larry Butler pleaded guilty to manufacturing methamphetamine and possession with intent to distribute methamphetamine, reserving his right to appeal from the district court's denial of his motion to suppress evidence obtained during a search of his home. Butler appeals, arguing that the search warrant authorizing the search of his home was not based on probable cause and was so blatantly deficient that the officers could not have relied upon it in good faith. We affirm.

I.

Around midnight on New Year's day of 2004, the Pike County, Illinois, Sheriff's Department responded to a complaint that a CD player and CB radio had been stolen from a vehicle belonging to Trent Conkright. About an hour later, Frank Dehart reported to police that someone had stolen a .22 caliber single-shot rifle from his automobile. About a month later on February 10, 2004, Sheriff Paul Petty spoke with a juvenile who admitted to some vandalism which occurred at the same time as the thefts, but the juvenile fingered Josh Taylor as the thief of the CD player, CB radio, and rifle. Taylor, in turn, admitted to stealing the CD player and CB radio, but claimed the juvenile had stolen the rifle.

Around the same time, sometime between February 7 and February 10, 2004, a confidential source informed Sheriff Petty that the .22 caliber rifle was located at the residence of the defendant, Larry Butler, in rural Mt. Sterling, Illinois. The confidential source explained that Butler had previously lived in Perry, Illinois, which was located in Pike County, and that the rifle had been at Butler's previous residence, but was then moved to Butler's current house. The confidential source stated that he had seen the rifle "within the confines of [the defendant's] residence." Sheriff Petty and a drug task force inspector had also received information that in the past year Butler had cooked methamphetamine ("meth") at his residence and that while he prepared the meth, individuals with firearms served as lookouts.

Officers applied for a search warrant to search Butler's residence. In support of the search warrant, Sheriff Petty filed an affidavit. The affidavit detailed Sheriff Petty's investigation and noted that "within the past 3 days, I spoke to a confidential source who indicated that the .22 caliber rifle stolen from Dehart was at Larry Butler's residence in rural Mt. Sterling. . . . [and] [t]hat the c/s has observed the firearm within the confines of Butler's residence." Sheriff Petty further stated "[t]hat the c/s providing information in this investigation has proven himself credible in that he has provided other information involving felony activity which has been validated by law enforcement reports, previous investigation, and other confidential information we have received. That his information has lead to the conclusion of active investigations."

Based on Sheriff Petty's affidavit, an Illinois state court judge issued a search warrant authorizing a search of the property and person of Larry Butler and his residence, including a detached garage, for evidence of the .22 caliber rifle, .22 caliber

shells and bullets and proof of residence.  Early in the morning of February 11, 2004, several law enforcement officers executed the warrant. During the search of the residence, officers found more than 20 firearms, including Dehart's stolen .22 caliber rifle.  They also observed evidence of meth and meth manufacturing in the house and garage.  After observing the evidence of the drug operations, one of the searchers, Deputy Sheriff Mike Norris, immediately submitted an affidavit for a second warrant to search the house and garage for meth and items used in the manufacturing of meth. The affidavit in support of the second search warrant referenced the evidence discovered during the initial search for the gun.  A state judge issued a second warrant to search for meth-related items. The officers, several of whom had remained to secure the premises, then seized the meth-related evidence.

A federal grand jury charged Butler with manufacturing meth and possession with intent to distribute meth and with two counts of possession of a firearm in furtherance of drug trafficking.  Butler filed a motion to suppress the evidence seized from his house and garage.  The district court held that the first search warrant application and affidavit did not establish probable cause to search Butler's house, but because the officers relied on the search warrant in good faith, the evidence obtained during the first search was admissible.  The district court then concluded that because the evidence from the first search was admissible, the second search warrant was supported by probable cause and thus evidence obtained during that search was admissible.  Accordingly, the district court denied Butler's motion to suppress.  Butler then pleaded guilty to the two drug counts, reserving his right to appeal the denial of his motion to suppress, and the government dismissed the two gun counts.  The district court sentenced Butler to 130 months of imprisonment on each of the drug counts, to run concurrently.  Butler appeals from the district court's denial of his motion to suppress.

II.

On appeal, Butler argues that while the district court correctly concluded that the warrant was not supported by probable cause, it erred in concluding that the officers relied on the warrant in good faith.  The government concedes that the search warrant affidavit did not establish probable cause, but claims that the warrant is saved by the good faith exception to the exclusionary rule.  Where a search warrant is not supported by probable cause, the government must present evidence that the officers acted in good faith, to avoid suppression of evidence recovered during the search.  *United States*

*v. Leon*, 468 U.S. 897, 924 (1984).  "Whether a law enforcement officer reasonably relied upon a subsequently invalidated search warrant is a legal question which we review *de novo*."  *United States v. Harju*, 466 F.3d 602, 604 (7th Cir. 2006).

Application to a judge for a search warrant, as done by the officers in this case, is prima facie evidence that the officers acted in good faith.  *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002).  A defendant must then overcome the presumption of good faith by showing

> either that: (1) the magistrate "wholly abandoned his judicial role," or otherwise failed in his duty to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police," *Leon*, 468 U.S. at 923, 914; or (2) the officer submitted an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

*Koerth*, 312 F.3d at 868.  Butler does not claim that the magistrate abandoned her judicial role or otherwise acted as a rubber stamp.  Rather, Butler claims that the affidavit was so lacking in indicia of probable cause that the officers acted unreasonably in relying on the warrant's existence.  There are two ways to prove such unreasonable reliance.  A defendant may show either that

> (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand, or (2) the affidavit is so plainly deficient that any reasonably well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."

*Koerth*, 312 F.3d at 869.

In this case, Butler claims that he has satisfied both tests.  First, Butler claims that this court in *Koerth* held that a materially similar affidavit failed to establish probable cause and thus the officers could not rely on the search warrant obtained in this case.  Contrary to Butler's argument, *Koerth* did not involve a materially similar affidavit.  Rather, the affidavit found deficient in *Koerth* merely stated that the informant was "believed to be a reliable source."  Conversely, the affidavit in this case stated:  "The c/s

providing information in this investigation has proven himself credible in that he has provided other information involving felony activity which has been validated by law enforcement reports, previous investigation, and other confidential information we have received. That his information has lead to the conclusion of active investigations." Thus, whereas in the *Koerth* case, the affidavit conclusorily stated that the affiant "believed" the source to be reliable, in this case the sworn testimony was that the source had "proven" himself credible. The affidavit in this case then provided a factual basis for the affiant's statement that the informant had proven himself credible, noting that the informant "has provided other information involving felony activity which has been validated by law enforcement reports, previous investigation, and other confidential information. . . ." The affidavit in this case thus included an explanation for why the source was not just "believed" to be reliable, but was, in fact, proven reliable. This difference distinguishes the affidavit in this case from the one in *Koerth*. Accordingly, because *Koerth* is distinguishable, it cannot serve to overcome the presumption of good faith.

Butler also claims that the affidavit is so plainly deficient that any reasonably well-trained officer would know that it failed to establish probable cause. In support of his position, Butler highlights all the deficiencies in the affidavit, as noted by the district court in finding the affidavit insufficient to support probable cause. For instance, Butler notes that the source was confidential, did not appear before the magistrate, and did not implicate himself in criminal conduct. While those circumstances were absent, as noted above, the source had proven himself reliable based on information provided to the government in other felony investigations. This additional circumstance negates a conclusion that the affidavit's reliance on the source was plainly deficient.

Butler also claims that the affidavit was deficient because it did not explain how the source recognized the rifle as the one stolen and did not state when the source had last seen the gun present in Butler's house. Those are defects in the affidavit, but neither is so significant to render the warrant plainly deficient. While the affidavit did not explain how the source recognized the rifle as the one stolen from Dehart, the affidavit did not merely state that the source saw a .22 rifle at Butler's, but clearly stated that the source indicated that Dehart's stolen rifle was located at Butler's house. Moreover, while the affidavit did not state when the source had last seen the rifle at Butler's, at most it was seen within the last month or so, because the weapon was stolen on January 1, 2004. The source provided information to the government sometime within three days of the filing of the affidavit on February 10. The affidavit also

explained that the source had seen Dehart's rifle at Butler's previous house and that Butler had moved the rifle to his new house. This added statement indicates that the source had a relationship with Butler that allowed him or her fairly regular access to Butler's house, and, more significantly, that Butler would likely still have possession of the gun because if he moved it to his new house, he likely intended to keep the gun. The additional statements in the affidavit that the government had information that Butler kept a large number of guns and used an armed look-out during drug operations also support the conclusion that the rifle was still at Butler's house. Furthermore, guns, unlike small quantities of drugs, are likely to remain in the same location for a longer time period. *See United States v. Harju*, 466 F.3d 602, 608 (7th Cir. 2006) (holding that officers relied on the warrant in good faith where three weeks had elapsed between the time the informant saw the guns and the issuance of the warrant). Thus, the fact that the affidavit did not state when the source had last seen the rifle in Butler's residence does not render the warrant plainly deficient.

In sum, none of the deficiencies Butler points to in the affidavit is so severe as to put a reasonably well-trained officer on notice that the warrant was invalid. *See Koerth*, 312 F.3d at 872 (holding that officers did not act unreasonably in relying on search warrant). Thus, Butler cannot overcome the presumption of good faith that arose because Sheriff Petty applied to a judge for a search warrant—a presumption which is further reinforced by the government's return to a judge to obtain a second warrant to continue the search after discovering the drugs. Accordingly, the evidence obtained during the first search of Butler's home was admissible. Because the evidence obtained during the officers' initial search was admissible under the good faith exception, the second warrant, which relied on the meth evidence discovered during the initial search, was also valid. Accordingly, all of the evidence seized during both searches was admissible and the district court properly denied Butler's motion to suppress and we AFFIRM.