NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 30, 2017
Decided December 27, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN Z. LEE, *District Judge*[*]

No. 16-3919

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 2:16-cr-20002 |
| KEVIN PETTIS, <br> *Defendant-Appellant*. | Colin S. Bruce, *Judge*. |

**O R D E R**

Kevin Pettis was convicted of being a felon in possession of a firearm. He appeals the denial of a motion to suppress the gun which police discovered in his apartment after obtaining a warrant. We conclude that the warrant issued to search the apartment was based on probable cause, and that, even if it wasn't, the police relied on the issuance of the warrant in good faith. Either way, suppression was not appropriate, so we affirm the judgment below.

---

[*] The Honorable John Z. Lee of the United States District Court for the Northern District of Illinois, sitting by designation.

## I. Background

In the early morning hours of July 7, 2013, police responded to a call from the Oakwood Trace apartment complex in Champaign, Illinois. The caller, Shaleke Russell, told the police that she had been in an argument with Kevin Pettis in the parking lot of the apartment complex. Russell said that when she pulled out her phone to call the police, Pettis jumped in his tan Chevy Tahoe and drove away, firing one gunshot out the window as he left. From Russell's description of where the shot was fired, the police were able to discover a single shell casing in that area of the parking lot. Russell also reported that the Tahoe's license plate number was P686094, although she said she was unsure about the final two numbers.

While one officer was meeting with Russell in the parking lot of Oakwood Trace, another went to Pettis's last known address, an apartment complex about two miles away at 407 South State Street. That officer observed a black male in the common grassy area in the middle of the U-shaped apartment building. The officer pulled into the complex's parking lot and noticed a tan Tahoe bearing Illinois tag P686056, which matched all but the last two digits of Russell's report. He felt the hood and noticed it was warm, indicating that it had just been driven. Then other officers notified him that they had tracked down Pettis a block away from the apartments. The officer who first located Pettis identified the man in custody as the same person he had seen in the common area. Pettis, however, did not have a gun when he was arrested.

Police then contacted the landlord at the South State apartments. The landlord said that Pettis had moved from apartment #1 to apartment #5 after his first apartment was damaged in a fire. The police observed that the lights were on in apartment #5, but nobody answered when they knocked on the door. Given the timing of the events, the officers believed that Pettis may have had time to enter his apartment in order to store the gun he had fired in the Oakwood Trace parking lot. So they decided to seek a search warrant for both the Tahoe and the apartment.

In the morning (only about four hours after the police had been called), officers brought two affidavits (one each for the Tahoe and the apartment) to the home of a state judge in order to seek warrants. In relevant part, the affidavits stated that: (1) the police received a report of a shot fired at Oakwood Trace; (2) Russell told an officer that she saw Pettis, whom she knew by sight, fire a gun in the air as he drove off in a Chevy Tahoe with Illinois tag P686056; (3) police found a single shell casing near the spot where Russell told them the gun had been fired; (4) an officer located Pettis in the common area at the

South State apartments minutes later; (5) the landlord confirmed that Pettis currently leases apartment #5; (6) the Chevy Tahoe was at the apartment complex and was hot to the touch; and (7) Pettis had the keys to the Tahoe in his possession when he was arrested. On these representations, the state judge issued the warrants. Police subsequently found in apartment #5 the gun that is the subject of this appeal.

A grand jury indicted Pettis on the felon-in-possession charge. Pettis then moved to suppress the gun on the ground that the police lacked probable cause to obtain a warrant. He first submitted an affidavit in which he declared that he no longer lived at the South State apartments and that apartment #5 was used as storage and open to anyone who wished to enter. The government then argued that Pettis's affidavit established that he lacked a reasonable expectation of privacy in the apartment. In response, he submitted a second affidavit in which he swore that he *was* paying rent for the apartment and that nobody was permitted to enter without his permission. The district court found that the two affidavits were contradictory and disregarded the second affidavit. As a result, the court concluded that Pettis lacked a reasonable expectation of privacy in the apartment. The court further held that even if Pettis had a reasonable expectation of privacy, probable cause existed for a warrant to search the apartment. Therefore, the court denied his motion to suppress. A jury then convicted him of the single count and he was sentenced to ten years' imprisonment. He appeals the denial of the suppression motion.

## II. Discussion

The district court denied Pettis's motion to suppress on two independent grounds, but we will assume without deciding that Pettis had a reasonable expectation of privacy in apartment #5. That's because even if he did have an expectation of privacy, the warrant issued to search apartment #5 for the gun Pettis fired in the parking lot at Oakwood Trace was issued upon probable cause. Moreover, even if probable cause were slightly lacking, the affidavits supporting the warrants (one each for the Tahoe and the apartment) were not so deficient that the executing officers could not in good faith rely on the issued warrants. We take these issues in turn.

While the district court's judgment on the question of probable cause is not entitled to deference, we do give "'great deference' to the conclusion of the judge who initially issued the warrant." *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008) (quoting *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008)). We defer to the state judge's decision to issue the warrant so long as "there is 'substantial evidence in the record' that supports [the state judge's] decision." *United States v. Curry*, 538 F.3d 718, 729 (7th Cir.

2008) (quoting *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002)). That substantial evidence must support the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Koerth*, 312 F.3d at 866 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The state judge "'is entitled to draw reasonable inferences about where evidence is likely to be kept,' and he 'need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'" *Curry*, 538 F.3d at 729 (quoting *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995)).

Here, the affidavits the police submitted to the state judge included more than enough evidence for the judge to infer that the gun would be inside either the Chevy Tahoe or apartment #5. According to the affidavits, Pettis fired the shot at Oakwood Trace and then was spotted minutes later in the common area at the South State apartments, with the still-warm Tahoe in the parking lot. He was then apprehended without the gun one block from the South State apartment building. Pettis admits there was probable cause to believe that he fired the gun. From this, a reasonable judge could infer that the gun (since it was not with Pettis when he was arrested) was probably in either the apartment or the Tahoe.

That's true even though there was a small mistake in the affidavits—the police represented to the state judge that the Tahoe's true license plate number was the number Russell had reported, even though she had gotten the final two digits wrong. Like the district court, we think this seemingly inadvertent error was not "significant enough to negate a finding of probable cause." Nor are we troubled by the fact that Pettis was seen at the South State apartments just a few minutes after the shot was fired, even though Google maps indicates that it normally takes seven minutes to drive between the two apartment buildings. As the district court explained, the events in question happened around three in the morning, so it is certainly plausible that Pettis could have driven from Oakwood Trace to South State in less than seven minutes. In sum, we agree with the district court that the state judge had probable cause to issue the warrant to search the apartment.

Even if we were to doubt the state judge's probable-cause finding, the good-faith exception to the exclusionary rule would save the evidence in this case. *United States v. Leon*, 468 U.S. 897, 920–23 (1984). Under the exception, we presume that the executing officers relied in good faith on the state judge's decision to issue a warrant. The defendant may overcome this presumption by showing that (1) the issuing judge was misled by information in the warrant application that the warrant affiant knew to be false or would have known was false but for his reckless disregard for the truth, (2) the judge wholly

abandoned his neutral and detached role in issuing the warrant, or (3) the warrant was so deficient on its face that the officers executing the warrant could not reasonably presume the warrant to be valid. *Id.* at 923. Pettis argues that the affidavits' inclusion of an incorrect license plate number and their failure to account for the normal seven-minute driving time between the two apartments render them misleading. But as we have already said, the license plate mistake was trivial (and probably a simple typo), and the timing of Pettis's trip could have plausibly been much quicker than seven minutes. So we agree with the district court that nothing was included in the warrant application that would have misled the state judge and induced him to issue a warrant that otherwise shouldn't have been issued.

Nor can Pettis show a lack of good-faith reliance based on the other two *Leon* prongs. There has been no serious argument that the state judge abandoned his role as a neutral arbiter when he issued the warrant. Speculation that the judge was acting as a "rubber stamp" without more is insufficient to overcome the presumption that judges are neutral decision-makers. Finally, given that a federal judge has already found that the warrant was supported by probable cause, we cannot say that it was so deficient on its face that no officer could presume that it was valid. Even if we are ultimately wrong about the merits of the probable-cause finding, a federal judge has upheld it. The police generally cannot be required to know the law better than federal judges, so in most cases a well-reasoned district court opinion supporting the state judge's probable-cause determination will indicate that the executing officers were justified in relying on the issuance of the warrant. That is the case here. Thus, we conclude that the exclusionary rule wouldn't bar admission of the gun even if the warrant lacked probable cause.

### III. Conclusion

For the reasons stated above, the district court properly denied Pettis's motion to suppress the gun he fired in the air at the Oakwood Trace parking lot.

AFFIRMED