# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 05-3777

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

MATTHEW S. HARJU,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 97—**Lynn Adelman**, *Judge.*

_____

ARGUED APRIL 10, 2006—DECIDED OCTOBER 20, 2006

_____

Before EASTERBROOK, RIPPLE and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Matthew S. Harju was indicted on one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the physical evidence on which the indictment was based. A magistrate judge recommended denying Mr. Harju's motion; the district court rejected the recommendation and granted the motion. The Government timely appealed. For the reasons set forth in the following opinion, we reverse the judgment of the district court.

# I

# BACKGROUND

## A. Facts

A commissioner of the Sheboygan County Court issued a warrant for a search of Mr. Harju's home. The commissioner relied upon information provided under oath by Detective Joel Clark of the Sheboygan Police Department. Detective Clark stated that he had been contacted by a confidential informant ("CI") who had told him that Mr. Harju possessed a firearm at his home. Specifically, the CI had told Detective Clark that a relative of the CI had observed Mr. Harju waving the firearm around the upper unit of his duplex approximately three weeks earlier on December 31, 2004.

Detective Clark also testified to several efforts to corroborate the information provided by the CI. The detective had the CI place, in the detective's presence, a recorded call to the relative. During the conversation, the relative essentially repeated the information that the CI had provided to Detective Clark. During the call, the CI also expressed concern that Mr. Harju was keeping the gun in the part of the duplex occupied by Mr. Harju's nephew, and the CI asked the relative to request that Mr. Harju remove the gun.

In the warrant application, Detective Clark also provided the commissioner with several details regarding Mr. Harju's residence, specifically that the residence was a duplex with a common door, that Mr. Harju paid rent for both units and that Mr. Harju's nephew resided in the other unit. Detective Clark also had reviewed state records and discovered that Mr. Harju was a felon who had been convicted of felony escape and sentenced to 24 months in state prison in 1996.

After confirming the date on which Mr. Harju had been seen with the weapon, the court commissioner issued a search warrant for the residence. The warrant was executed the same day, January 21, 2005, and the search of Mr. Harju's home uncovered ammunition and a firearm.

## B. District Court Judgment

After Mr. Harju was indicted, he moved to suppress the evidence uncovered during the search. A magistrate judge reviewed the warrant and determined that the warrant was supported by probable cause because the information, which formed the basis of the warrant, came from a citizen witness who did not know that she was providing information to law enforcement and because this information was corroborated in part by Detective Clark's investigation. The magistrate judge further concluded that, even if the warrant were not supported by probable cause, the evidence fell within the good faith exception established in *United States v. Leon*, 468 U.S. 897, 913 (1984).

The district court declined to follow the magistrate judge's recommendation and granted the motion to suppress. In the district court's view, the warrant was not supported by probable cause because the information provided by Detective Clark was not sufficiently detailed and was stale:

> Clark did not describe the firearm to the commissioner or indicate that the relative had described it to him. Clark also did not indicate to the commissioner the circumstances under which the relative had observed the firearm. Again, it appears that the relative did not describe such circumstances to Clark. Clark did not state where in the house the defendant was when the

> relative allegedly observed him with a gun, nor did he indicate that he had information that defendant kept the gun in his house or where he might have kept it. . . .

R.30 at 6-7. The district court believed that, in light of the shortcomings in the evidence, the lack of established reliability of the CI or of the CI's relative, as well as the lack of corroboration with respect to the alleged criminal activity, the warrant was not supported by probable cause.

Turning to the question of good faith, the district court concluded that the good faith exception did not apply because, based on the case law in existence at the time the application was filed, the information supporting the warrant was facially inadequate. *See id*. at 18-23.

## II

## DISCUSSION

The Government asks us to review the district court's decision that Detective Clark was not entitled to rely in good faith on the warrant issued by the commissioner. Whether a law enforcement officer reasonably relied upon a subsequently invalidated search warrant is a legal question which we review de novo. *See United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002).[1]

---

[1] On appeal, the Government argues only that the good faith exception applies; it does not claim that the warrant was supported by probable cause.

### A. The Foundations and Purpose of the Exclusionary Rule

Simply stated, "[t]he exclusionary rule operates to prevent the Government from using evidence seized as the result of an illegal search in a subsequent criminal prosecution." *United States v. McGough*, 412 F.3d 1232, 1239 (11th Cir. 2005). It has existed, in some form, as part of our constitutional jurisprudence for over one hundred years. *See Boyd v. United States*, 116 U.S. 616, 638 (1886) (holding that a notice to produce personal papers was "unconstitutional and void, and that the inspection by the district attorney of said invoice, when produced in obedience to said notice, and its admission in evidence by the court, were erroneous and unconstitutional proceedings").

Although commentators have articulated several purposes served by the rule, *see generally* 1 Wayne R. LaFave, *Search and Seizure* § 1.1(f), at 21-25 (4th ed. 2004) (discussing deterrence, judicial integrity and popular trust in government as among the purposes of the exclusionary rule), the purpose identified by the Supreme Court as the " 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' " *United States v. Janis*, 428 U.S. 433, 446 (1976) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)).

The deterrence value of the exclusionary rule was used to justify its broadest application in *Mapp v. Ohio*, 367 U.S. 643 (1961). In that case, the Court applied the exclusionary rule to the fruits of illegal searches conducted by state officers and used in state prosecutions. Specifically, the Court noted that the exclusionary rule was a "deterrent safeguard without insistence upon which the Fourth Amendment would have been reduced to a form of words," *id.* at 648 (internal quotation marks and citations omitted), and,

accordingly, held that "all evidence obtained by searches and seizures in violation of the Constitution is, by the same authority, inadmissible in a state court*." Id.* at 655.

More recently, however, the Court has relied on the rule's deterrent purpose in declining to expand its application beyond traditional criminal proceedings. *See, e.g., I.N.S. v. Lopez-Mendez*, 468 U.S. 1032, 1043 (1976) (refusing to employ the exclusionary rule in deportation proceedings in part because the "deterrent value" of the rule would not be served); *United States v. Calandra*, 414 U.S. 338, 351 (1974) (holding that grand jury witnesses may not refuse to answer questions on the ground that they are based on illegally seized evidence because any "incremental deterrent effect which might be achieved by extending the rule to grand jury proceedings is uncertain at best"). Indeed, even within the context of criminal trials, the Court's focus on deterrence also has resulted in a contraction of the rule's scope. *See Hudson v. Michigan*, 126 S. Ct. 2159, 2168 (2006);[2] *Leon*, 468 U.S. 897.

The present case concerns the exception to the exclusionary rule articulated by the Supreme Court in *United States v. Leon*. In *Leon*, the Court addressed "whether the Fourth Amendment exclusionary rule should be modi-

---

[2] In *Hudson v. Michigan*, 126 S. Ct. 2159, 2168 (2006), the Court stated:

> In sum, the social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial—incomparably greater than the factors deterring warrantless entries when *Mapp* was decided. Resort to the massive remedy of suppressing evidence of guilt is unjustified.

fied so as not to bar the use . . . of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900. The starting point for the Court's analysis was the premise that the exclusionary rule was not "a necessary corollary of the Fourth Amendment," as many had assumed in the wake of *Mapp v. Ohio*. *Id.* at 905-06. Instead,

> [w]hether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." Only the former question is currently before us, and it must be resolved by weighing the costs and benefits of preventing the use in the prosecution's case in chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective.

*Id.* at 906-07 (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). The rule, observed the Court, therefore should operate to preclude evidence only in situations " 'where its remedial objectives are thought most efficaciously served,' " *id.* at 908 (quoting *Calandra*, 414 U.S. at 348), namely when it will "deter police misconduct," *id.* at 916.[3]

---

[3] The Court has stressed this purpose in other cases as well. *See United States v. Calandra*, 414 U.S. 338, 347 (1974) (noting that the "prime purpose" of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and

(continued...)

"[E]vidence obtained pursuant to a subsequently invalidated warrant," therefore, should be excluded only when that exclusion will "alter the behavior of individual law enforcement officers or the policies of their departments." *Leon*, 468 U.S. at 918.

The Court explained that, generally speaking, excluding evidence seized pursuant to a warrant will not serve the rule's remedial purpose. Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should not be expected to question that determination. *See id.* at 921; *see also Illinois v. Krull*, 480 U.S. 340, 349 (1987) (quoting same). "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 922.

The Court then went on to identify those situations in which, despite the issuance of a warrant, exclusion would deter police misconduct, and, therefore, application of the exclusionary rule would be justified. First, suppression would be warranted if the affiant knew that the information provided to the magistrate was false, or if the affiant provided the information with reckless disregard to its truth or falsity. *See id.* at 923. Second, the rule would apply if the magistrate judge wholly abandoned his judicial role. *Id.* Third, exclusion would be warranted if the presenting officer had not operated in objective good faith, as evidenced by reliance on an affidavit that was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concur-

---

³  (...continued)
seizures"); *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (quoting same).

ring)). Finally, suppression would be appropriate if "the warrant [were] so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.*

In addressing questions of good faith under *Leon*, we have held that the Government bears the initial burden of establishing that the police officer relied in good faith on the warrant. *See Koerth,* 312 F.3d at 868. However, we also have held that "[a]n officer's decision to obtain a warrant is prima facie evidence that she was acting in good faith." *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). Whether a defendant has rebutted this presumption of good faith is evaluated according to a framework similar to that employed in the qualified immunity context. We explained the good-faith analysis in some detail in *Koerth*:

> We evaluate an officer's good-faith reliance with an analysis similar to that used in cases involving the affirmative defense of qualified immunity. *See Olson v. Tyler*, 825 F.2d 1116, 1120 (7th Cir. 1987) (citing *Malley v. Briggs,* 475 U.S. 335 (1986)). "Police officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." [*United States v.*] *Brown*, 832 F.2d [991, 995 (7th Cir. 1989)]. When evidence has been obtained pursuant to a subsequently invalidated search warrant, we will exercise our discretion and admit the evidence only if we are convinced, after review, it is appropriate to do so pursuant to *Leon*'s exception to the exclusionary rule. That is to say, we will admit the evidence unless: (1) courts have clearly held that a materially similar affidavit previously failed to

establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. . . .

312 F.3d at 869 (parallel citations omitted).

**B.  The Application to Search Mr. Harju's Duplex**

In the present case, Detective Clark's decision to seek a warrant is prima facie evidence of his good faith. The burden therefore falls on Mr. Harju to negate Detective Clark's good faith based on one of the criteria set forth above. Mr. Harju submits that, based on the case law in existence at the time Detective Clark made his application, Detective Clark had notice that the evidence supporting the warrant was patently deficient. The Government maintains, however, that the same case law makes clear that Detective Clark could not have known that the warrant was plainly lacking probable cause. The Government maintains that the cases relied upon by the district court are materially distinguishable from the present situation and, consequently, did not put Detective Clark on notice of any deficiency in the application.

The parties first invite our attention to *Owens v. United States*, 387 F.3d 607 (7th Cir. 2004). In *Owens*,

> [t]he warrant . . . was based on a barebones affidavit, signed by a detective, which stated that three months earlier an informant had bought "a quantity of crack" from Owens at a house believed to be Owens's resi-

dence. There was no indication of the actual quantity of crack or of the reliability of the informant. . . .

*Id.* at 608. Owens' attorney had moved to suppress the evidence arguing that "a sale of an unknown quantity of an illegal drug three months before a search warrant was sought does not, without more . . . establish probable cause to believe that the search of the premises on which the sale took place would turn up contraband or evidence of crime." *Id.* We agreed that this argument "should have been a winner"; we stated:

> If the quantity was slight—which, for all the judge issuing the warrant could have known, it was—there would be no basis for thinking either that the premises were a crack house or that the money received in the sale would still be on the premises. It would be just as likely that either Owens or someone with access to his house had made a single, isolated sale, perhaps to a desperate acquaintance.

*Id.* We further noted that the affidavit was "[s]o inadequate" that the search could not be saved by the good faith exception outlined in *Leon*. *Id.*

Mr. Harju maintains that his situation "mirrors *Owens* with regard to the paucity of detail in the warrant application." Appellee's Br. at 12. The Government contends, however, that the contraband here was not a fungible item, like narcotics, but a firearm, which is less likely to be sold in a short period of time. *See* Appellant's Br. at 16-17.

We agree with the Government that the facts in *Owens* are not sufficiently similar to those presented here as to undermine Detective Clark's reasonable reliance on the warrant. Our decision in *Owens* rested in large part on the fact that small quantities of drugs and of cash are not likely to be

found in the same location after several months have elapsed. Here, by contrast, only three weeks had elapsed since the gun had been seen in Mr. Harju's possession on his property, and, unlike small amounts of drugs or cash, the gun was not likely to have been sold (or consumed) during that period of time. Consequently, we do not believe that *Owens* necessarily put Detective Clark on notice that the affidavit was deficient, and Detective Clark's failure to include all of the details contained in the *Owens* affidavit does not constitute evidence of bad faith.

Mr. Harju also points to *United States v. Peck*, 317 F.3d 754 (7th Cir. 2003). The facts of *Peck* are as follows:

> James Root, deputy sheriff of the Macon County Sheriff's Department, received a phone call from a confidential informant, "Pat Doe," alleging that Peck possessed crack cocaine and cannabis. Doe told Root that she wanted Peck punished because he was not paying for diapers for their child and that she thought Peck should be arrested because he was dealing drugs. Doe said she had been inside Peck's residence within the last two days. While inside the residence, Peck allegedly showed Doe large amounts of two substances wrapped in individual packages. Peck told Doe that the substances were crack cocaine and marijuana that he planned to sell. Even without Peck's representations, Doe claims that she knew what the substances were based on her own "personal experiences."

> Root drafted an affidavit including Doe's statements. Because Doe had not previously given any information to the police, Root asked Doe to visit the station and swear under oath that her statements were true. Judge Paine administered the oath to Doe, and Doe then

signed the affidavit. Relying on the affidavit, Judge Paine issued a search warrant. . . .

*Id.* at 755. The court determined that, based on the few details provided by the informant regarding Peck's home and his person, the lack of explanation regarding how the informant knew that the substances were illicit drugs, and the lack of corroboration by the police, there was an insufficient factual basis to support the issuance of a search warrant for the premises. Nonetheless, the court determined that the warrant fell within the good faith exception:

> Even though the warrant issued by the judge was bare bones, it was not so lacking as to make it facially deficient. Although minimal, Doe's statement did contain evidence that Peck possessed and planned on selling drugs. In addition, Root addressed issues regarding Doe's credibility and veracity by requiring Doe to come to the police station and sign her statement under oath in front of the issuing judge. Therefore, it was reasonable for Root to rely on a warrant issued by a neutral and detached officer of the court.

*Id.* at 757-58 (citations omitted).

Mr. Harju maintains that "[w]hat's important about *Peck* is that the Court struck the warrant initially on probable cause grounds on much more detailed facts than those set forth in the instant case," Appellee's Br. at 14. He emphasizes that, "in *Peck*, the police relied upon the statements of an informant who said that she had seen drugs at her ex-boyfriend's house two days earlier. She personally appeared before the magistrate that issued the warrant." *Id.* (citations omitted). The Government, on the other hand, believes that *Peck* is "markedly distinguishable" for two reasons: (1) the informant in *Peck* "had an axe to grind with Peck," and (2)

"the police in *Peck* did next to nothing to corroborate Doe's information." Appellant's Br. at 18.

There is no question that the affidavit in *Peck* suffered from a marked lack of detail. However, the Government is correct that there are important differences between the affidavits in each of the cases. First, the affiant in *Peck* clearly was biased against the defendant: "Doe told Root that she wanted Peck punished because he was not paying for diapers for their child . . . ." *Peck*, 317 F.3d at 755. Second, we noted in *Peck* that "[c]ompounding the weaknesses of Doe's statement is the failure of the police to corroborate her allegations." *Id.* at 757. Here, by contrast, Detective Clark confirmed the key elements of the CI's information through an impromptu, recorded conversation between the CI and his relative. Detective Clark also confirmed other aspects of the CI's information such as the design of the duplex, its ownership and its residents. We believe that an officer, after taking these steps, reasonably could have believed that these efforts distinguished the present situation from that in *Peck*, which specifically noted "the failure of the police to corroborate her allegations." *Id*.

Finally, without argument or analysis, Mr. Harju points to *Koerth* and *Mykytiuk* as support for his claim that Detective Clark should have known that the affidavit was factually insufficient; these cases, he maintains, found "no probable cause on a warrant application more detailed than that provided in this case." Appellee's Br. at 15.[4] However, we

---

[4] Mr. Harju also notes that the district court relied upon a Fourth Circuit case, *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), and a case from the Eastern District of Michigan, *United States v. Bryant*, 951 F. Supp. 674 (E.D. Mich. 1997), in rejecting the

(continued...)

do not believe that either *Koerth* or *Mykytiuk* is sufficiently similar to the present case to undermine Detective Clark's good-faith reliance.

In *Koerth*, we accepted the Government's concession that the warrant was not supported by probable cause because of the affidavit's "use of essentially conclusory statements without corroboration." *Koerth*, 312 F.3d at 868. However, we also determined that the good faith exception applied. We explained:

> We are convinced that Inv[estigator] Sturz acted in objective good faith, and the evidence seized by the

---

<sup></sup>

[4] (...continued)

Government's good-faith claim. As with *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002), and *United States v. Mykytiuk*, 402 F.3d 773 (7th Cir. 2005), Mr. Harju does not make any specific arguments based on this case law; however, he does "acquiesce[] with Judge Adelman on his reliance upon these cases." Appellee's Br. at 15. The Government counters that these cases are distinguishable on their facts. *See* Appellant's Br. at 22. Even if these cases could not be distinguished on their facts, we do not believe that these cases constitute "well-established" law that affidavits similar to the one offered here should be rejected. In the context of qualified immunity, which has provided the foundation for our good-faith analysis, *see Mykytiuk*, 402 F.3d at 777, this court first looks to the Supreme Court and circuit case law to determine whether a right is clearly established. In the absence of controlling precedent, we look to all relevant case law in order "to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Denius v. Dunlap*, 209 F.3d 944, 951 (7th Cir. 2001) (internal quotation marks and citations omitted). The cases relied upon by the district court do not establish such a trend.

drug task force was properly admitted, because it was not clearly established on August 31, 2000 that Inv. Sturz's affidavit failed to justify a search of Defendant Koerth's house. . . . [I]t was clearly established prior to August 31, 2000 that an officer seeking to obtain a search warrant was required to provide more than an uncorroborated, conclusory assertion of illegal activity from a *confidential informant* of unknown reliability. However, Koerth has failed to provide us with any cases holding that an affidavit materially similar to Inv. Sturz's would fail to meet the test of establishing probable cause based upon information from a *named informant* like Savage. . . . Based on the evidence presented in the absence of such a ruling, we refuse to hold that Inv. Sturz behaved unreasonably, or acted in objective bad faith, or disregarded clearly established law when conducting her investigation and relying upon the search warrant issued in the case before us.

*Id.* at 869-70. (citations omitted). *In Koerth*, therefore, the defendant did not carry his burden of negating the officer's reasonable reliance on the affidavit because there were material distinctions between the affidavit at issue and the affidavits that, in the cases proffered by the defendant, were rejected as lacking probable cause.

In the present case, there are material distinctions between Detective Clark's affidavit and the affidavit in *Koerth*. Here, Detective Clark attempted to corroborate the CI's information and therefore to avoid the deficiency we cited with respect to the officers in *Koerth*. If Detective Clark's efforts still fell short of establishing probable cause, the fault lay with the judicial officer issuing the warrant, not with Detective Clark. As the Court noted in *Leon*, "[p]enalizing the officer for the magistrate's error, rather than his own,

cannot logically contribute to the deterrence of the Fourth Amendment violations." 468 U.S. at 921. This principle makes clear that invoking the exclusionary rule in the present case on the authority of *Koerth* would be inappropriate.

We believe the same is true with respect to *Mykytiuk*. In *Mykytiuk*, we noted that the affidavit contained some of the same infirmities as did the affidavit in *Koerth*, and, therefore, we accepted the Government's concession that the affidavit lacked probable cause. However, despite factual similarities with *Koerth*, we nevertheless determined that the good faith exception applied. We noted that "[p]olice officers are charged with having knowledge of well-established legal principles," *Mykytiuk*, 402 F.3d at 777, and that we had taken

> a narrow view in determining whether a legal principle is well-established . . . holding that evidence seized pursuant to a search warrant should not be excluded unless the supporting affidavit is "plainly deficient" or where "courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand."

*Id.* (quoting *Koerth*, 312 F.3d at 869). Employing this "narrow view," we concluded that the affidavit in *Mykytiuk* was not supported by "the type of evidence that has been found so wanting in the past—*uncorroborated*, conclusory assertions from unproven informants." *Mykytiuk*, 402 F.3d at 777 (emphasis added). For the same reasons, we do not believe that our probable cause determination in *Mykytiuk* undermines Detective Clark's good-faith reliance on the affidavit here. In the present case, there is no question that the affidavit supporting the warrant for Mr. Harju's duplex

lacked some detail. Mr. Harju is correct that the affidavit bears some similarity to the affidavits in the cases upon which he relies. However, the affidavit at issue here is not similar in all material respects to those that we have found lacking in probable cause. Mr. Harju has not pointed to a case involving a weapon, as opposed to drugs, nor has he pointed to a case in which the officers exerted the same type of corroborative efforts as Detective Clark.[5] For these reasons, we do not believe that Mr. Harju has met his burden of showing that Detective Clark relied unreasonably on the present affidavit; the good faith exception to the exclusionary rule therefore applies.

---

[5] We believe that the record before us also contains additional support for application of the good faith exception. In *United States v. Leon*, 468 U.S. 897, 926 (1984), the Court found that the affidavit before it "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." Here, both the state court commissioner, as well as a federal magistrate judge, determined that Detective Clark's affidavit established probable cause for the search of Mr. Harju's residence. Although perhaps not dispositive of the issue of good faith, it certainly is further evidence that Detective Clark's reliance on the affidavit was reasonable.

## Conclusion

For the foregoing reasons, we reverse the judgment of the district court.

REVERSED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*