NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 20, 2007
Decided April 27, 2007

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

| | |
|---|---|
| No. 06-3481 | Appeal from the United States District Court for the Central District of Illinois |
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, | |
| *v.* | No. 05 CR 10062 |
| COURTNEY MORRIS, a/k/a C-NOTE, *Defendant-Appellee*. | **Joe Billy McDade**, *Judge*. |

**O R D E R**

Courtney Morris was charged in an indictment with conspiracy to distribute cocaine, possession with intent to distribute "crack," and weapons possession in furtherance of the crimes. Morris filed a motion to suppress evidence seized during searches conducted pursuant to two state court search warrants. The district court granted Morris' motion to suppress. The government appeals. Because we conclude that the officers relied on the search warrants in good faith, we REVERSE and REMAND.

I.

On June 8, 2005, Peoria, Illinois police officers and FBI agents arrested Courtney Morris for drug dealing. While Morris was in police custody, two Peoria police officers signed sworn complaints requesting search warrants for two residences in Peoria: 237 W. Virginia, where Morris lived, and 1020 W. Gift Street, a residence that Morris frequented and for which he had a key. The first complaint requested the issuance of a warrant to search the residence at 1020 W. Gift for evidence of "possession or control of the premises or the cocaine, and any related items which have been used in the commission of, or which constitutes evidence of Unlawful Possession of a Controlled Substance . . . ." In support of the search warrant request, Sergeant J.W. Adams of the Peoria Police Department stated that he

> believe[s] that the above listed items to be seized are now located on the person and/or premises described above because: On June 8, 2005 complainant caused a surveillance to be conducted on Courtney L. Morris, date of birth 1-25-72. Officers of the S.I.D. Vice Unit observed Morris leave from his listed address of 237 W. Virginia at 1223 hrs. Morris' [sic] was carrying a bag. Morris parked in the alley behind 1020 W. Gift at 1230 hrs. Officer Moore observed Morris exited [sic] his vehicle at 1231 hrs. Morris carried a bag in to [sic] the residence through the back door. Morris remained inside for several minutes then existed the residence and returned to his vehicle until 1314 hrs when Officer Moore and Complaint observed Morris leave in his vehicle.

> Officers of the S.I.D. continued the mobile surveillance. Morris went through parking lots and side streets until he parked in the BP gas station lot on Knoxville @ Lake @ 1324 hrs. Morris was observed entering the gas station and returning to his vehicle. Morris then backed up to the area of the dumpster. At approx. 1334 hrs. D.E.A. Agent T. Murphy observed Morris go on foot to the dumpster and place a gray bag like item inside the dumpster. Morris immediately returned to his vehicle and left south on Knoxville. At 1335 hrs Agent Murphy and Sgt. Bainter immediately went to the dumpster and recovered the packaging for 1 kilo of powder cocaine. The white powder substance tested positive for cocaine. No one went to the dumpster between the time Morris was at the dumpster and Agent Murphy and Sgt. Bainter recovered the cocaine packaging. The

remaining contents of the dumpster were boxes and paperwork from the business.

The Complainant has caused numerous surveillance to be conducted on Courtney L. Morris over the past 90 days. Officers of the S.I.D. have observed Morris drive to 1020 W. Gift. On one occasion the Complainant observed Morris met [sic] with an individual. Morris got into a vehicle with the individual. Morris and the individual drove around the block. Morris got out of the vehicle and immediately returned to 1020 W. Gift. Based on the Complainant's training and experience this appeared to be a drug transaction. The Complainant caused the individual and his vehicle to be stopped away from the area. 29.3 gr. of crack cocaine were seized and the individual was arrested.

Complainant has been a Peoria Police Officers/Sergeant for the past 27 years. Complainant has been assigned to the Special Investigation Division on four separate occasions, with the latest assignment starting in September 2003. Complainant has approximately 10 years of experience in the Special Investigation Division. Along with tenure in the Special Investigation Division, complainant was assigned to the Tactical Unit, Special Response Team, Internal Affairs and Patrol Division. During this time complainant has been trained in the appearance, odor, and packaging techniques concerning cannabis, cocaine, and/or heroin as well as other dangerous drugs.

Officer John P. Couve filed a second complaint, seeking the issuance of a search warrant to search the residence located at 237 W. Virginia and to seize items tending "to evidence possession or control of the premises or the cocaine, and any related items which have been used in the commission of, or which constitutes evidence of Unlawful Possession of a Controlled Substance . . . ." Officer Couve's affidavit then detailed the same facts as set forth in Sergeant Adams' affidavit, adding that he had "checked Peoria Police records and found that Courtney Morris has listed his address as 237 W. Virginia with this agency as recently as July 7, 2003."

Based on these affidavits, a state judge issued search warrants for 1020 W. Gift Street and 237 W. Virginia. During the searches, officers recovered a "freshly cooked" kilogram of crack cocaine in a false ceiling at 1020 W. Gift. They also found weapons and $120,000 in currency at 237 W. Virginia. A grand jury later returned a superseding indictment, charging Morris with conspiracy to possess with intent to

distribute cocaine, possession with intent to distribute cocaine, and two counts of possession of a firearm in furtherance of drug trafficking.

Morris filed a motion to quash his arrest and to suppress evidence seized from the two residences. After a hearing on the motion, the district court found that probable cause supported the arrest of Morris, but did not support the search warrant. The district court also rejected the government's claim that the officers acted in good faith in executing the warrants, concluding that the affidavits were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." District Court Order at 5. The government filed a motion to reconsider, which the district court denied, reasoning:

> There is no showing that Mr. Morris kept drugs in his residence or at the Gift Street house at any time in the past or that he had sold drugs out of these premises. The only drug connection to these houses is the fact that defendant either lived or had visited there. To uphold the seizure on the basis of the "Good Faith" exception would be giving carte blanche for a search of any residence or other premises visited by a person suspected of drug dealing. The rationale being that drugs are necessarily kept in such places. More is needed to warrant application of the *Leon* exception. There must be some indicia of illegal drug dealing at the place to be searched.

District Court Order at 2.

The government appeals from the district court's order granting Morris' motion to suppress, pursuant to 18 U.S.C. § 3731.

## II.

On appeal, the government does not challenge the district court's conclusion that the search warrants for the Virginia and Gift street residences were not supported by probable cause. Rather, the government argues that the district court nonetheless erred in granting Morris' motion to suppress because the officers relied in good faith on the search warrants. This court reviews *de novo* the question of "[w]hether a law enforcement officer reasonably relied upon a subsequently invalidated search warrant . . . ." *United States v. Harju*, 466 F.3d 602, 604 (7th Cir. 2006). This legal question is governed by *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that the exclusionary rule did not apply if a law enforcement officer, in good faith, relied on a magistrate's apparently valid warrant, even if that warrant was later determined to be invalid. *Id.* at 922-25.

In this case, the officers obtained search warrants to search the two residences, and that is prima facie evidence that they were acting in good faith. *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). To determine whether Morris rebutted this presumption of good faith, we apply

> a framework similar to that employed in the qualified immunity context. . . . That is to say, we will admit the evidence unless: (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.

*Harju*, 466 F.3d at 607 (internal quotations omitted).

Morris argues on appeal that he has overcome the presumption of good faith first by showing that materially similar affidavits previously failed to establish probable cause. In support of his argument, Morris cites several cases in which probable cause did not support a search warrant application. *See* Appellee's Brief at 6 - 8, citing *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004); *United States v. Peck*, 317 F.3d 754, 755-57 (7th Cir. 2003); *United States v. Koerth*, 312 F.3d 862, 866-68 (7th Cir. 2002). Those cases, however, all involved information coming from confidential informants, whereas in this case, the affidavits were based on surveillance conducted by two police officers. Thus, this case is distinguishable from the cases cited by Morris.

Morris also attempts to overcome the presumption of good faith by arguing that "the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Harju*, 466 F.3d at 607 (internal quotations omitted). Although it is a close question, we conclude that the affidavit is not so plainly deficient as to overcome the presumption of good faith. There is no claim here that the officers misstated or exaggerated the facts contained in the affidavits. Nor is this a case in which the only connection between Morris and the residences is that he, a suspected drug dealer, lived in or frequented the homes. Rather, in this case, the officers conducted surveillance of Morris for approximately three months. It was only after they had witnessed Morris leave one residence, enter the second, leave, and then drive in a suspicious manner to a parking lot and then dispose of what the officers—both experienced and trained in investigating narcotics trafficking—determined to be the empty packaging for a kilogram of

cocaine and which tested positive for cocaine residue, that the officers sought a search warrant. The officers sought the search warrant the same day Morris disposed of the packaging material and while Morris was in custody, making it impossible for Morris to return to his residence and remove any drugs that had been removed from the recently recovered packaging. Additionally, the officers had previously witnessed Morris drive to the Gift Street address and then engage in behavior consistent with drug-dealing, namely entering a car, riding around the block, and then exiting the vehicle. A subsequent stop of the driver of that car turned up 29.3 grams of crack cocaine. A reasonable officer could conclude under these circumstances that Morris was using the two residences to manufacturer and/or store the drugs. While Morris counters that no one ever testified seeing drugs in the residences, "[a] search warrant may issue even in the absence of direct evidence linking criminal objects to a particular site[,] taking into account the totality of the circumstances." *United States v. Garey*, 329 F.3d 573, 578 (7th Cir. 2003) (internal quotations omitted). Although the evidence that drugs would be found in the two residences is circumstantial and might not support a finding of probable cause, the question on appeal is solely whether the officers relied on the search warrants in good faith. We conclude that under the totality of the circumstances, the officers relied on the warrants in good faith.

One final point: Morris argues on appeal that the officers' failure to seek guidance from a federal prosecutor demonstrates their lack of good faith. While consulting with a prosecutor may demonstrate the good faith of an officer, failure to do so does not override good faith. Rather, an officer demonstrates good faith by seeking a warrant from a neutral, detached magistrate, and whether he first also sought guidance from a prosecutor does nothing to call into question the officer's reliance on the magistrate's determination that probable cause supports the issuance of a warrant.

### III.

The officers sought and obtained a search warrant from a state court judge, creating a presumption that they acted in good faith. Morris has failed to overcome the presumption of good faith and therefore under *Leon*, even if probable cause did not support the search warrant, the evidence was nonetheless admissible. Accordingly, we REVERSE the district court's order suppressing the evidence obtained during the searches of 237 W. Virginia and 1020 W. Gift and we REMAND for further proceedings consistent with this opinion.