**UNITED STATES of America, Plaintiff,**

**v.**

**Aaron J. JOHNSON, Defendant.**

**No. 08–CR–36.**

United States District Court, E.D. Wisconsin.

June 2, 2009.

Daniel H. Sanders, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Plaintiff.

Christopher J. Cherella, Law Offices of Christopher J. Cherella, Milwaukee, WI, for Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION AND DENYING MOTION TO SUPPRESS

C.N. CLEVERT, Jr., District Judge.

On February 23, 2009, Aaron J. Johnson moved to suppress all items of physical evidence seized from property located at 43401 Twin Pine Road or Circle in Laytonville, California, on or about January 23, 2008. Johnson argues that the warrant for the search, issued by a magistrate judge in the Northern District of California, was not supported by probable cause. The United States responded to the motion.

On April 2, 2009, Magistrate Judge Aaron E. Goodstein issued his recommendation that Johnson's motion to suppress be denied. The time for Johnson to object to the recommendation expired on or about April 16, 2009. No objection was ever filed.

Although magistrate judges are permitted to decide many nondispositive motions, such as motions for a bill of particulars, *see* 28 U.S.C. § 636(b)(1)(A); Fed.R.Crim.P. 59(a), regarding certain matters enumerated in § 636(b)(1)(A), including motions to suppress evidence, a magistrate judge may only propose findings and make recommendations, § 636(b)(1)(A), (B); Fed. R.Crim.P. 59(b)(1). The district judge reviews de novo the recommendations of the magistrate judge to which a party objects timely. 28 U.S.C. § 636(b)(1)(C); Fed. R.Crim.P. 59(b)(2), (3). However, portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir.1999). The clear error stan-

dard means that the magistrate judge's ruling is overturned only if the district court is "left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 943 (7th Cir.1997).

Because Johnson did not file any objection to the magistrate judge's recommendation dated April 2, 2009, this court reviews Magistrate Judge Goodstein's recommendation for clear error. No clear error can be found following review of the motion and the affidavit used to obtain the search warrant at issue. Hence, following review of the reasons set forth by Magistrate Judge Goodstein, there was a substantial basis in the record for the determination of the issuing magistrate judge's conclusion that there was probable cause supporting the search of the property at 43401 Twin Pine Road, Laytonville, California. In other words, this court does not believe that a mistake has been made. To the contrary, the court agrees with Magistrate Judge Goodstein that the facts alleged in the affidavit underlying the search warrant were sufficient to induce a reasonably prudent person to believe that a search of the Twin Pine Road property would uncover evidence of a crime. Therefore,

IT IS ORDERED that the magistrate judge's recommendation of April 2, 2009, is adopted and Johnson's motion to suppress (Doc. 441) is denied.

### RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT, JR.

AARON E. GOODSTEIN, United States Magistrate Judge.

Aaron J. Johnson ("Johnson") is charged in two counts of a superseding indictment with conspiracy to distribute more than 1,000 kilograms of marijuana, in violation of Title 21, United States Code, Sections 841(b)(1)(A) & 846 and Title 18, United States Code, Section 2, and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). (Docket No. 97.) On February 23, 2009, Johnson filed a motion to suppress evidence contending that the affidavit submitted in support of the search warrant pursuant to which the evidence was seized, did not establish probable cause. (Docket No. 441.) On March 9, 2009, the government responded. (Docket No. 440.) On March 16, 2009, Johnson informed the court that he would not be filing a reply. (Docket No. 448.) The pleadings on the defendant's motion to suppress are closed and the matter is ready for resolution. Due to this case being designated as a complex case under this district's Local Rules, a jury trial has not yet been scheduled in this matter.

### MOTION TO SUPPRESS

Following the return of the initial indictment in this case charging numerous individuals, not including Johnson, with conspiracy to distribute more than 1,000 kilograms of marijuana, on January 23, 2008, a United States Magistrate Judge in the Northern District of California approved a search warrant for three properties, including 43401 Twin Pine Road in Laytonville, California (referred to as "Target Location 2" in the affidavit and herein). (Docket No. 441–2.) The affidavit submitted in support of the search warrant is lengthy and much of it does not directly relate to the search challenged by Johnson. (*See* Docket No. 441–3.) It is sufficient to say that various law enforcement agencies uncovered evidence of a large-scale marijuana cultivation and trafficking operation spanning from rural areas of northern California, where the marijuana was allegedly grown, to cities in the Midwest, including Chicago and Milwaukee, where the marijuana was alleged-

ly distributed. This investigation involved the court-authorized interception of the wire and electronic communications to and from certain phones used by co-defendant Oskar Sheldon ("Sheldon") and the installation of a court-authorized GPS tracking device on a Chevy Silverado known to be operated by Sheldon. Target Location 2 was believed to be a marijuana cultivation or storage location for this operation. (Docket No. 441–3 at 5.)

On September 26, 2007, Mendocino County Sheriff deputies stopped a vehicle for speeding. (Docket No. 441–3, ¶ 32.) The two individuals in the car stated they were from Booneville, California and had come to Laytonville to visit someone. (Docket No. 441–3, ¶ 32.) The deputies smelled fresh marijuana inside the vehicle and obtained consent the search the vehicle. (Docket No. 441–3, ¶ 32.) Inside the trunk, the deputies located a storage bag containing $34,020 in cash, banded in $1000 increments. (Docket No. 441–3, ¶ 32.) Next to the cash was a black plastic bag containing two clear plastic bags, each containing just under one-pound of marijuana. (Docket No. 441–3, ¶ 32.) Numerous cellular phones were also found, as well as 25 money orders, 9 of which were made out to Johnson, for amounts between $998.00 and $999.99. (Docket No. 441–3, ¶ 32.)

On October 29, 2007, investigators intercepted a phone call in which Sheldon stated he had to stop by "A.J.'s" and "spin up a batch or two so they had some bubble to smoke too." (Docket No. 441–3 at ¶ 51.) Agents believed that this was a reference to manufacturing "honey oil" or "honey pot," a controlled substance containing THC made by extracting and concentrating the THC contained in marijuana, (Docket No. 441–3 at ¶ 51), and that "A.J." was a reference to Johnson, who is connected to an address "down the street from Target Location # 2," (Docket No. 441–3 at ¶ 52). At the time of this call, the

Chevy Silverado operated by Sheldon was in San Francisco but shortly after the call, the Silverado went to Target Location 2, where it remained until about 11:30 that night. (Docket No. 441–3 at ¶ 51.)

On November 4, 2007, at about 4:00 PM, law enforcement intercepted a telephone call wherein Sheldon stated he was "bubbling," and responded affirmatively when asked if he was "trying to make massive amounts of that or what?" (Docket No. 441–3 at ¶ 58). The affiant states that "bubbling" refers to a "process by which TCH [sic], the active ingredient in marijuana, is extracted from left-over marijuana plant parts after trimming off the buds." (Docket No. 441–3 at ¶ 60.) At the time of this call, Sheldon's Silverado was at Target Location 2. (Docket No. 441–3 at ¶ 59.) The following day, Sheldon was recorded saying that he spent the entire night at "A.J.'s house." (Docket No. 441–3 at ¶ 61.) Investigators subsequently reviewed records from the GPS devise and learned that the Sheldon's Silverado was parked in the immediate area of Target Location 2 from about 3:00 PM on November 4, 2007 through about 2:00 AM on November 5, 2007. Later in the evening of November 5, GPS surveillance revealed that the Silverado was back at Target Location 2. (Docket No. 441–3 at ¶ 66.)

On November 16, 2007, based upon an intercepted telephone call involving Sheldon and GPS surveillance of the Silverado, investigative agents believed that Sheldon, after harvesting marijuana, was in the process of removing personal property from a property where marijuana was grown, and driving to Target Location 2. (Docket No. 441–3 at ¶ 75.)

On November 20, 2007, Sheldon stated that he was in "the Mendo" and he was tired because he had been up late "bubbling last night." (Docket No. 441–3 at ¶ 78.) Based upon prior investigation,

agents believed that this was a reference to Target Location 2, which is in Mendocino County. (Docket No. 441–3 at ¶ 78.) On November 24, 2007, monitoring of Sheldon's telephone ceased, but according to GPS records, Sheldon was at Target Location 2 for several hours on November 24, 27, 30, December 5, 8, 17, 18, and January 5, 6, 10, and 19, 2008. (Docket No. 441–3 at ¶ 79.) A review of government and public database records revealed that Target Location 2 was owned by an individual with prior arrests and convictions for drug crimes. (Docket No. 441–3 at ¶ 80.)

On January 18, 2008, agents conducting surveillance on Target Location 2 observed blankets draped over a second story window whereas other windows were not covered. (Docket No. 441–3 at ¶ 86.) The affiant states that based upon his training and experience, it is common for operators of indoor marijuana grow operations to cover the windows of the grow operation. (Docket No. 441–3 at ¶ 86.) Further, agents reviewed aerial photographs of Target Location 2 which revealed a sub-surface structure that appeared to have vents on the roof structure. (Docket No. 441–3 at ¶ 86.) The affiant states that he is aware that it is necessary for indoor marijuana growing operations to vent out heat. (Docket No. 441–3 at ¶ 86.)

**Probable Cause**

■ "When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir.2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir.1967)). Probable cause is a fluid concept, *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir.1990), determined by the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search ... will uncover evidence of a crime." *McNeese*, 901 F.2d at 592; *Gates*, 462 U.S. at 238, 103 S.Ct. 2317 (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place); *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir.1995). "Probable cause requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. 2317.

■ The probable cause determination of the judicial officer who issued a warrant shall be afforded great deference. *Gates*, 462 U.S. at 236, 103 S.Ct. 2317. This court does not conduct a de novo review of the probable cause determination of the judicial officer who issued the warrant. *See id.* Rather, this court shall upset a probable cause determination only if there was not a "substantial basis" for the issuing court to believe that a search would uncover evidence of wrongdoing. *Id.* There is a substantial basis for the issuing of a warrant when the affidavit, "read as a whole in a realistic and common sense manner ... allege[s] specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir.2005) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir.1999)).

In his motion to suppress, Johnson contends that there are various deficiencies in each reference to Target Location 2 in the affidavit and that in light of these various deficiencies, the affidavit does not establish probable cause to search Target Location 2. Further, Johnson contends that there is insufficient information in the affidavit to connect him to Target Location 2.

■ For present purposes, the question is whether the affidavit demonstrates the existence of probable cause to believe that Target Location 2 would contain evidence of a crime or contraband. Viewing the affidavit as a whole in a practical and common sense manner and affording great deference to the determination of the magistrate judge who issued this warrant, it is the conclusion of this court that there is a substantial basis to support the magistrate judge's determination that probable cause existed to search Target Location 2.

The affidavit demonstrates that Sheldon was the person using the Silverado upon which the investigating agents installed a GPS monitor. The Silverado regularly went to Target Location 2, and was there when Sheldon stated that he was "bubbling." Investigators' observations of Target Location 2 identified the indicia of an indoor marijuana grow operation. Further, indications that Johnson was associated with a residence "down the street" from Target Location 2, that Sheldon repeatedly said he was at "A.J.'s" when GPS records indicated that he was at Target Location 2, and that Johnson was associated financially with the organization, all lead this court to conclude that there was a substantial basis for the magistrate judge who issued the warrant to conclude that there was probable cause to search Target Location 2. Accordingly, the court shall recommend that Johnson's motion to suppress be denied.

Alternatively, even if this court were to agree with Johnson that the affidavit failed to establish probable cause to search the Target Location 2, any evidence seized pursuant to that warrant need not be suppressed because the police officers who obtained and executed the warrant could have reasonably believed that they had obtained a valid warrant. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### *Leon* **Good Faith Exception**

■ Under the good faith exception recognized in *Leon,* suppression would be appropriate only if the affidavit was so lacking in probable cause that no reasonable police officer could have believed that the warrant was valid. *Id.* at 922, 104 S.Ct. 3405. If a police officer could have reasonably relied upon the search warrant, then evidence seized pursuant to the warrant shall not be suppressed simply because the search warrant was later determined to be defective. *Id.* "If a defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant." *United States v. Koerth,* 312 F.3d 862, 868 (7th Cir.2002). A police officer's decision to seek a warrant is prima facie evidence of good faith. *United States v. Harju,* 466 F.3d 602, 607 (7th Cir.2006); *United States v. Merritt,* 361 F.3d 1005, 1013 (7th Cir.2004); *Koerth,* 312 F.3d at 868. Thus, the burden falls upon the defendant to rebut this prima facie case. *Harju,* 466 F.3d at 607.

Because the test is an objective one, it is not necessary that this court conduct an evidentiary hearing to determine whether the particular officers involved in the execution in the warrant at issue in this case did, in fact, rely upon it. The question is whether a reasonable and well-trained police officer would have believed that this warrant was valid. *See Leon,* 468 U.S. at 922 n. 3, 104 S.Ct. 3405; *see also, United States v. Dickerson,* 975 F.2d 1245, 1250 (7th Cir.1992).

Police officers are not expected to be trained as lawyers and are not required review search warrants with the scrutiny demanded from a judicial officer. "Judicial officers have the responsibility to determine whether ·there is probable cause to

issue a warrant; police officers should not be expected to question that determination." *Harju*, 466 F.3d at 606; *see also, Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."); *Massachusetts v. Sheppard*, 468 U.S. 981, 989–90, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). However, "[p]olice officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles," *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir.2002) (quoting *United States v. Brown*, 832 F.2d 991, 995 (7th Cir.1987)), and therefore cannot blindly rely upon a search warrant simply because it bears the signature of a judge.

As explained above, this court believes that the warrant was amply supported by probable cause. In light of the fact that a magistrate judge in the Northern District of California and this court have both concluded that the affidavit established probable cause, the court finds that it would not be unreasonable for the police officers involved in the search warrant to believe that they had obtained a valid warrant to search Target Location 2.

**IT IS THEREFORE RECOMMENDED** that Johnson's Motion to Suppress Evidence, (Docket No. 441), be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D.Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

April 2, 2009.